609 P.2d 61

Duane R. BROCKMAN and Shirley R. Brockman, husband and wife, Appellants,

v.

METROPOLITAN LIFE INSURANCE COMPANY, a New York Corporation, Appellee.

No. 14184.

Supreme Court of Arizona, In Division.

March 18, 1980.

Fennemore, Craig, von Ammon & Udall by Calvin H. Udall and Leland H. Jones, Phoenix, for appellants.

Streich, Lang, Weeks & Cardon by Louis A. Stahl, Phoenix, for appellee.

HOLOHAN, Vice Chief Justice.

Appellants Duane R. and Shirley R. Brockman, husband and wife, appeal from a

summary judgment granted by the Superior Court of Maricopa County in favor of appellee Metropolitan Life Insurance Company in the amount of $17,792. The trial court also granted Metropolitan's motion for summary judgment on the Brockmans' counterclaim. We took jurisdiction pursuant to 17A A.R.S., Rules of Civil Appellate Procedure, rule 19(e).

Duane Brockman and his dependents were insured by Metropolitan under a "Major Medical Expense Insurance" group policy covering employees of the J. I. Case Company. On December 22, 1969, Brockman's wife, Shirley, and his four-year-old son, Michael, were involved in a serious automobile accident with a vehicle driven by a state employee. Shirley Brockman was seriously injured in the accident, and their son, Michael, suffered extensive and permanent injuries.

When Brockman made a claim for benefits under the policy, Case informed him that his coverage had ended when his employment was terminated with the company. Brockman had left his employment with Case to work for the Ford Motor Company.

Although the actual group policy was never made a part of the record on appeal in this case, the Group Insurance Certificate which contains a summary of provisions in the policy sets forth the following:

"Section E.

CESSATION OF INSURANCE

"The insurance referred to herein shall automatically cease on whichever of the following dates first occurs.

"(1). The date of termination of the Employee's employment. Termination of employment, for the purposes of insurance, means cessation of active work as an Employee as defined in the Group Policy, except that in circumstances specified in the Group Policy the Employer may deem the Employee's employment to continue after such cessation subject to the terms of the Group Policy."

Management at Case advised Brockman that the "date of termination" was December 15, 1969, exactly one week before the date of the accident. On a form referred to as his "termination papers," there is a line stating: "Last Day Worked 12/15/69." In refusing to consider Brockman's claim, Case also noted that he had not exercised his extension privilege concerning the insurance. The form provides a section where an employee may continue his group insurance coverage for either one, two, or three months by so indicating and authorizing that payment for such be deducted from his paycheck.

Brockman maintained that his termination date was January 8, 1970, and he referred to the entry on his termination form under "Effective Date _____" which is filled in as January 8, 1970.

Brockman also pointed out that $1.10 was deducted from his paycheck for "group insurance" for the period ending December 31, 1969. Case subsequently sent Brockman a refund of $.55 for the latter half of December, stating that a payroll adjustment had not been made in time and that such deduction had been made for long-term disability benefits under another policy in the group insurance package.

Brockman's attorney asked for a review of the coverage question by Metropolitan's legal department. In response, an attorney for Metropolitan wrote, in part, the following:

"I have obtained the employer's file, and after full review of the question of coverage believe that an amicable disposition should be made. Toward this end, and provided that your client will reimburse Metropolitan out of the proceeds of any recovery by way of third party action, Metropolitan will pay all applicable policy benefits for medical and hospital expense incurred by Mr. Duane Brockman on behalf of Mrs. Brockman arising out of the aforesaid injury.

"If such disposition meets with your approval and that of your client, will you kindly have him execute the enclosed Reimbursement Agreement in duplicate and return same to me. An additional copy of the form is enclosed for your files.

"The certificate provision relied on is contained in the penultimate paragraph of

Section 4, Exclusions, Major Medical Expense Insurance."

The certificate provision mentioned in the foregoing correspondence states:

"If benefits have been paid under the Group Policy on account of services received by the Employee or by a Dependent and thereafter it is established that the charges for such services were not paid by the Employee or the Dependent, or said Employee or Dependent was otherwise reimbursed therefor, the Insurance Company shall be entitled to a refund of the amount of the benefits paid which is in excess of the benefits that would have been payable based on the actual charges incurred and paid by the Employee or the Dependent."

The Reimbursement Agreement was executed and returned to Metropolitan and later another such agreement was executed and returned concerning medical expenses incurred on behalf of Michael Brockman. Thereafter, Metropolitan paid to the Brockmans a total of $17,792 in insurance benefits for submitted medical bills.

Metropolitan periodically inquired of the Brockmans' attorney as to the status of any third party actions in relation to the accident. Approximately three years after the first reimbursement agreement was executed, the Brockmans' attorney acknowledged receipt of Metropolitan's inquiries and informed Metropolitan's counsel that he had long ago advised the Brockmans that the reimbursement agreements were unenforceable under Arizona law. Based on that advice, the Brockmans had decided not to reimburse Metropolitan from any recovery or settlement of their claims with a third party. Shirley Brockman's claims against the state and its carrier were settled for $21,000. Michael Brockman's claims were eventually compromised for approximately $751,000.

Metropolitan brought the present action against the Brockmans in Superior Court to recover under the reimbursement agreements the total amount it had previously paid to the Brockmans in policy benefits. The first claim of Metropolitan's complaint sought reimbursement because the parties had entered a compromise and settlement of a disputed claim. The fourth claim of the complaint was based on the reimbursement provision of the policy. Summary judgment was granted to Metropolitan on these claims.

Appellants Brockman have presented several arguments in support of their position that they are not required to reimburse Metropolitan. The only issues which merit discussion are whether the reimbursement agreements are enforceable, and whether summary judgment should have been granted against the Brockmans on their counterclaim.

■ Summary judgment on the fourth claim was based on the reimbursement provision of the policy. Our decision in *Allstate Insurance Company v. Druke*, 118 Ariz. 301, 576 P.2d 489 (1978) has voided such reimbursement provisions as attempts to secure the assignment of personal injury claims which are not assignable under Arizona law. *See also Harleysville Mutual Insurance Company v. Lea*, 2 Ariz.App. 538, 401 P.2d 495 (1966); *State Farm Fire and Casualty Company v. Knapp*, 107 Ariz. 184, 484 P.2d 180 (1971); Restatement, *Contracts* § 547.

The granting of summary judgment in favor of Metropolitan on the fourth claim was error and must be set aside.

■ Metropolitan argues that it is entitled to judgment on its first claim. The company contends that the first claim is based on a compromise agreement entered into by the parties which settled the disputed coverage issue, and the agreement is therefore enforceable.

The agreement at issue, although labeled by Metropolitan as a compromise and settlement, is actually an assignment of the proceeds of a personal injury claim. Such an assignment is not enforceable irrespective of the label, and the so-called compromise agreement is in like manner and for the same reason unenforceable. *See Allstate Insurance Co. v. Druke, supra.*

The granting of summary judgment on the first claim was error, and the judgment must be set aside.

The final point concerns the counterclaim. Appellants maintain that they were entitled to coverage under the Metropolitan policy, and some additional medical bills have not been paid which would be covered by the policy. The trial court granted summary judgment against appellants denying all relief sought in the counterclaim.

The issue of coverage under the policy must be determined based upon the date when appellant Duane Brockman left the employment of Case. There is a factual dispute involved in this issue. The termination papers use two different terms which appear to be in conflict—"Last Day Worked" versus "Effective Date." Added to this question is the act of Case in deducting an amount from the final paycheck for "group insurance." These various factors present a question of the meaning and effect to be given to them. Under the circumstances it was error to enter summary judgment on the counterclaim. *See Lundy v. Prescott Valley, Inc.*, 110 Ariz. 362, 519 P.2d 61 (1974).

The judgment of the Superior Court is reversed, and the matter is remanded for further proceedings consistent with this opinion.

HAYS and GORDON, JJ., concur.